SUWANA REYNOLDS,                      Case No. 08-CV-6321 (PJS/JJG)

           Plaintiff,

v.                                           ORDER DENYING MOTION FOR
                                                SUMMARY JUDGMENT

CITY OF MINNETONKA,

           Defendant.

---

         Rockford R. Chrastil and Jonathan G. Steinberg, CHRASTIL & STEINBERG, P.L.L.P., for plaintiff.

         Julie A. Fleming-Wolfe, FLEMING-WOLFE LAW OFFICE, for defendant.

         Plaintiff Suwana Reynolds brings claims of racial and sexual discrimination and retaliation under Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. §§ 2000e et seq., and the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01 et seq. This matter is before the Court on the motion of defendant City of Minnetonka ("the City") for summary judgment. After reviewing the record carefully and giving the matter considerable thought, the Court concludes that Reynolds's claims, although weak, cannot be dismissed by the Court. The City's motion for summary judgment is therefore denied.

         Reynolds was initially hired by the City in October 2004 as part of its cadet program. In September 2005, the City hired Reynolds as a full-time police officer. Like other new officers, Reynolds was required to complete a one-year probationary period. Reynolds completed the first four phases of her field training on schedule and began solo patrols in January 2006. At the end of August 2006, though, the City decided to extend Reynolds's probationary period for three

more months, purportedly to give her an opportunity to correct deficiencies in her performance. In November 2006, the City terminated Reynolds's employment.

Reynolds is the first and only African-American officer hired by the City. She also appears to be the only officer not to be retained after completing the full year-long probationary period. While she was on probation, several officers told Reynolds that she was being monitored more closely for mistakes than other probationary officers. Although these officers did not explicitly say that the increased scrutiny was due to Reynolds's race, a reasonable jury could infer as much given that Reynolds was the only African-American officer ever to work for the City's police department.

As a cadet, Reynolds was warmly praised for her courtesy, professionalism, and eagerness to learn. When she became a probationary officer, she continued to receive praise for these traits, yet the numerical scores assigned to these traits on Reynolds's formal evaluations dropped markedly and inexplicably. Not only were her scores lower than the scores of two white probationary officers hired at the same time as Reynolds, her scores were lower than the average of all other probationary officers hired since 2003.

The City now contends that Reynolds lacked the necessary firearms skills and knowledge of the City's geography. But her September 2006 annual review says absolutely nothing about either of these problems — a curious omission if, one year into Reynolds's employment, these problems were serious enough to cause the City to consider firing her. Indeed, when Reynolds was terminated, the police chief told her that she would be a good officer with some other police department but was not a "good fit" with the City. After her termination, the police chief gave Reynolds a positive letter of recommendation. It is not clear why the chief thought that someone

who would make a good police officer with another police department would not make a good police officer with the City; the record contains no reason to believe that policing in Minnetonka is any more difficult than policing in other municipalities.

Admittedly, although the foregoing evidence could readily allow a jury to conclude that the City's proffered reasons for terminating Reynolds are pretextual, there is little evidence suggesting that the real reason for Reynold's termination was racial or sexual animus. Nevertheless, the Court concludes that Reynolds has offered enough evidence of unlawful motivation to survive summary judgment. One of Reynolds's primary supervisors, who was the most senior sergeant in the police department during the term of Reynold's employment, made racially and sexually offensive remarks in Reynolds's presence. This same supervisor failed to recognize Reynolds for receiving a letter of commendation even though the supervisor took time during roll call to read a similar letter about another white male probationary officer. Given this supervisor's important role in the department — and especially his important role in supervising and evaluating Reynolds — a reasonable jury could conclude that the supervisor influenced the decision to terminate Reynolds's employment.

In addition, as noted earlier, Reynolds is the only African-American officer ever hired by the City's police department and the only officer not to be retained after completing her probation. Experienced officers also told Reynolds that she was being scrutinized more closely than other probationary officers. Although the City is correct in asserting that none of these circumstances, by itself, could support a jury verdict in Reynolds's favor, if the jury credits all of the evidence submitted by Reynolds and draws all permissible inferences in her favor, the jury could infer that either race or sex was a motivating factor in Reynolds's termination.

As for Reynolds's claim of retaliation, the City concedes, for purposes of its motion for summary judgment, both that Reynolds engaged in protected conduct and that Reynolds suffered a materially adverse action when the City terminated her employment. Thus, the City's sole argument for summary judgment on Reynolds's retaliation claim is that Reynolds has failed to establish any causal connection between her complaints of discrimination and her termination. Given the amount of time that passed between Reynolds's complaints and her termination, the Court is inclined to agree with the City. But eliminating Reynolds's retaliation claims will not substantially narrow the case for trial, given that all of Reynolds's claims rely on essentially the same body of evidence. Morever, Reynolds has alleged that she suffered other adverse actions apart from her termination, such as critical performance evaluations and the extension of her probation. Given that Reynolds's discrimination claims will have to be tried to a jury, the Court believes that it would be best to leave Reynolds's retaliation claims to the jury as well.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that defendant's motion for summary judgment [Docket No. 12] is DENIED.

Dated: January 12, 2010            s/Patrick J. Schiltz
                                   Patrick J. Schiltz
                                   United States District Judge